Grover JENKINS
v.
Geal RODERICK.
Civ. A. 57–329.

United States District Court
D. Massachusetts.
Nov. 5, 1957.

Geo. Broomfield, Boston, Mass., for plaintiff.

George Ajootian, Providence, R. I., for defendant.

WYZANSKI, District Judge.

This case presents the question as to the propriety of allowing a jury trial to a seaman not only on his Jones Act count, but also on his unseaworthiness count, and on his count claiming less than $3,000 for maintenance and cure.

This case began in the United States District Court for Rhode Island. Both parties were citizens of that state. Plaintiff, a fisherman, filed a civil action, with a claim of jury trial, against defendant who was his employer and the owner of the F. V. Liberty. In count 1 plaintiff alleged that defendant's negli-

gence caused him to be injured at sea on the Liberty. Count 2 alleged that defendant's unseaworthy vessel caused the identical injuries. Count 3 alleged that defendant owed him maintenance and cure. For the convenience of parties and witnesses, in the interest of justice, the United States District Court for Rhode Island transferred the case to this Court. 28 U.S.C. § 1404(a).

Count 1 alleging negligence is founded on § 33 of the Jones Act, 46 U.S.C.A. § 688, which provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury * * * Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

Inasmuch as this count sets forth a "civil action" which "arises under the laws of the United States" the Rhode Island Court had, and this Court has, jurisdiction of count 1 by virtue of 28 U.S.C. § 1331.[1] Panama R. Co. v. Johnson, 264 U.S. 375, 383, 44 S.Ct. 391, 68 L.Ed. 748.[2] Having jurisdiction of count 1, this Court is required by the text of the statute just quoted to afford plaintiff a jury trial on his Jones Act count.

The second count attributes to defendant's vessel's unseaworthiness the same injuries referred to in count 1, seeks the same recovery, and asks for the same jury trial.

The first theory on which an unseaworthiness count joined with a Jones Act count has been allowed to go to the jury is that if it is not allowed to go to the jury and there is on the Jones Act count a verdict and judgment adverse to the seaman there is an estoppel by judgment against the seaman on the unseaworthiness count. McCarthy v. American Eastern Corp., 3 Cir., 175 F.2d 724; Balado v. Lykes Bros. S. S. Co., 2 Cir., 179 F.2d 943, 945. This is not a sustainable proposition. While it is true that an adverse judgment on an unseaworthiness count would constitute res judicata on a Jones Act count for the same injury, (See Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 324, 47 S.Ct. 600, 71 L.Ed. 1069) the reverse is not true. By statute the Jones Act count could be heard in any court either in admiralty or at law in which the seaworthiness count could be heard. But, aside from 28 U.S.C. § 1331 considered later, there is no authority for a federal court to hear as a jury case a seaworthiness claim where the parties are co-citizens.

Another theory is that the unseaworthiness count is within the pendent jurisdiction of a court having jurisdiction of a Jones Act count involving the same injury. Jordine v. Walling, 3 Cir., 185 F.2d 662, 670; Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 234 F.2d 253, 258; McAfoos v. Canadian Pac. Steamships, 2 Cir., 243 F.2d 270, 274. See Doucette v. Vincent, 1 Cir., 194 F.2d 834, 840, note 5. Cf. Hart and Wechsler, The Federal Courts and The Federal System pp. 802–809 analyzing the application in various ways of the doctrine of pendent jurisdiction first announced in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. When, as at bar, a seaman's injury is alleged to be due to a defective apparatus, to succeed on either the Jones Act or the unseaworthiness count plaintiff must prove (1) the defect, (2) its

1. "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

2. It is unnecessary to consider whether before the case was transferred to this District the Rhode Island district in which defendant "resides or has his principal office" had an alternative basis of jurisdiction by virtue of the Jones Act itself. See 5 Moore's Federal Practice, par. 38.35 [4] note 4.

causal connection with plaintiff's injury, and (3) the extent of plaintiff's damages. In the Jones Act count he must go further and show defendant knew or should have known of the defect. Since the facts necessary to maintain the unseaworthiness claim are fewer than those necessary to maintain the Jones Act claim, it is said that there is no significant reason against, and many considerations of convenience favoring, pendent jurisdiction.

Indeed the only argument to the contrary is that to permit pendent jurisdiction here goes beyond not Constitutional power, but Congressional intent: that is, it cannot be shown that Congress contemplated that a jury, rather than a judge, would have power to render a decision favorable to a seaman in a case where the seaman failed to bear his burden of showing that his employer had an opportunity to know of the defect which caused the injury. But this argument is not so hard to answer as many others unsuccessfully offered in opposition to other cases of pendent jurisdiction. Other pendent jurisdiction cases have, without obvious warrant in the Constitution, allowed a federal court to adjudicate a claim ordinarily exclusively within state court jurisdiction. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. Altering the distribution of judicial power between state courts and national courts in the absence of explicit authority in the Constitution goes further than altering the distribution of business between judge and jury in the absence of a Congressional direction, it being clear that such a Congressional direction would be constitutional.

The third theory is that the unseaworthiness count, whether or not joined to the Jones Act count, "arises under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Doucette v. Vincent, 1 Cir., 194 F.2d 834.

This theory has been rejected in the Second Circuit and Third Circuit. Paduano v. Yamashita Kisen Kabushiki Kaisha, 2 Cir., 221 F.2d 615; Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 234 F.2d 253, 257; Jordine v. Walling, 3 Cir., 185 F.2d 662.

The first step in Chief Judge Magruder's reasoning in Doucette is that a cause of action for unseaworthiness is (1) a "civil action" which (2) "arises under the Constitution [or] laws" [194 F.2d 845] of the United States. Both branches of this proposition are vindicated by Pope & Talbot Co., Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. The Supreme Court there held that in a United States District Court exercising diversity jurisdiction under 28 U.S.C. § 1332 (and hence sitting as the equivalent of a state court) a person injured by the unseaworthiness of a vessel had a right to recover according to rules prescribed by the federal judiciary, even though those rules were hostile to, or not enunciated by, state law. In short, regardless of the forum where the question arises, federal law creates the substantive principles governing a cause of action based on unseaworthiness, prescribes the rule applicable for calculating recoverable damages, and apparently commands courts of general jurisdiction to entertain such causes as civil actions. Hawn's case, 346 U.S. 406, 409–410, 74 S.Ct. 202, 204–205. See Frankfurter J.'s concurrence at pages 415–416, 418–419 of 346 U.S., at pages 208, 209–210 of 74 S.Ct.

The second step in Chief Judge Magruder's reasoning is that since analytically a cause of action for unseaworthiness is a civil action arising under the laws or Constitution of the United States it falls within the scope of jurisdiction conferred on District Courts by 28 U.S.C. § 1331. The words of the jurisdictional statute fit like a glove.[3] Nor is it valid objection against the application of the

3. It may be contended that only acts of Congress and not mere decisions of the Supreme Court of the United States are "laws" of the United States. A disingenuous answer is that there are in other fields rulings that the word "laws" does include court decisions. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82

jurisdictional statute that the District Court is being asked to hear a case arising under a Constitutional interpretation subsequent to the enactment of the 1875 Jurisdictional Act from which 28 U.S.C. § 1331 is derived. We may assume that the Forty-Third Congress, in conferring upon the then circuit courts jurisdiction over causes arising under the laws and Constitution, authorized those courts to hear causes under post-1875 as well as under pre-1875 legislation and Constitutional interpretations.

But the real difficulty lurking in the second step in Chief Judge Magruder's reasoning has been exposed by Judge Medina's opinion in Paduano v. Yamashita Kisen Kabushiki Kaisha, 2 Cir., 221 F.2d 615. When Congress enacted the 1875 Judiciary Act the Congress was aware that for nearly a century the federal courts had exercised jurisdiction over maritime torts. By § 9 of the Judiciary Act of 1789 [1 Stat. 76-77 (now 28 U.S.C. § 1333)] the first Congress gave the then District Courts original jurisdiction over maritime cases, and, by §§ 11 and 21 [1 Stat. 78-79, 83-84], gave the Circuit Courts appellate jurisdiction of those cases and original jurisdiction of only such maritime cases as involved diversity jurisdiction. Hence long before 1875 there was in existence a basis for original jurisdiction in the federal courts of any maritime tort which the claimant cared to invoke. There being already this special provision for maritime torts, the legal profession for nearly three-quarters of a century after 1875 seems to have assumed that the general provisions of the 1875 Judiciary Act should be construed as subject to an implied exception with respect to non-statutory maritime cases. See Hart and Wechsler, The Federal Courts and The Federal System, p. 787. So far as appears, from 1875 to the decision in Doucette no judge, no lawyer, no commentator regarded the 1875 Judiciary Act as reaching these non-statutory maritime cases. This long-standing and clearly reasonable construction is not without weight.

Moreover, if the 1875 Judiciary Act were read literally and without the implied exception, one consequence would be that maritime torts would be not merely within the District Court's original jurisdiction under 28 U.S.C. § 1332, but also within the provisions of § 2 of the Judiciary Act of 1875 (18 Stat. 470, now 28 U.S.C. § 1441) governing removal from state courts. Paduano's case, above, 221 F.2d at page 619. This is a consequence of great significance. For the broad construction confers upon defendants a power to take virtually all maritime causes out of the state courts. Such a revolution in practice does not seem to have been called to the attention of the Forty-Third Congress, and if accomplished *sub silentio* might prove doubly offensive to supporters of state court jurisdiction.

We now come to the third step in Chief Judge Magruder's opinion,—the right to a jury trial when a maritime tort is heard in the District Court under 28 U.S.C. § 1331. In the case at bar this is the vital issue. In Doucette it was not presented for decision, nor even argued. But though it was not the *ratio decidendi*, the dictum of Magruder C. J. was so deliberate that it deserves full quotation in any discussion of the issue of jury trial.

"The only important difference in trying the case on the law side under 28 U.S.C. § 1331 is that the plaintiff gets a jury trial [see R.S. § 566, 28 U.S.C. § 770 (1946 ed.); Reviser's Note to 28 U.S.C. § 1873; Rule 38, Federal Rules of Civil Procedure, 28 U.S.C.], as he would also

L.Ed. 1188; Warren v. United States, 340 U.S. 523, 526-527, 71 S.Ct. 432, 95 L.Ed. 503. A better answer is that when the Supreme Court makes a decision on maritime matters, the decision must get its authority either from the Constitution or a law pursuant thereto, and hence anyone who brings an action based upon a doctrine fashioned by the Supreme Court to govern maritime matters, brings a case arising under the Constitution or laws.

if the case came under § 1332. Conceivably, as a matter of policy, it would be better to try these cases, founded on the general maritime law, in accordance with the historic procedures of courts of admiralty, before a judge without a jury. Congress could have so required, for parties do not have a constitutional right to a jury trial in cases within the cognizance of a court of admiralty. But Congress made the opposite policy decision way back in 1789, in the famous saving clause, whereunder suitors with claims cognizable in admiralty were also permitted, as theretofore, to pursue a common law remedy in any common law court of competent jurisdiction, with the incident of a jury trial. And ever since 1789 that has been so." 194 F.2d at page 846.

This quotation shows that Chief Judge Magruder assumes that when a court hears an unseaworthiness count as a "civil action" under 28 U.S.C. § 1331 the court has before it a suitor pursuing "the right of a common law remedy, where the common law is competent to give it", (to use the celebrated phrase derived from § 9 of the Judiciary Act of 1789, but now somewhat altered by 28 U.S.C. § 1333.) But this seems to be an erroneous assumption. In an unseaworthiness count plaintiff does not seek a common law remedy; he seeks a federal maritime remedy. Moreover, the remedy he seeks is one which the common law (unaided by statute) is not competent to give. For the first of the two propositions just stated Pope & Talbot Co., Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 is a recent and compelling authority. It was there held that the modern maritime tort of unseaworthiness (that is, the tort which permits partial recovery by a contributorily negligent plaintiff,) was both as to right and as to remedy fashioned by federal law. The United States Supreme Court disregarded Pennsylvania's rule of substantive law that a contributorily negligent plaintiff could not recover, and it compelled a court analogous to a Pennsylvania court to afford a divided damage remedy unknown to Pennsylvania law. For the second proposition, one of the most persuasive authorities in Justice Holmes's opinion in Kalleck v. Deering, 161 Mass. 469, 472, 37 N.E. 450, 452. He recognizes that the common law "cannot divide the damages when the plaintiff has been guilty of contributory negligence." This view was also expressed by Fuller C. J. and Brown J. in Belden v. Chase, 150 U.S. 674, 691, 703, 14 S.Ct. 264, 37 L.Ed. 1218. See also, Waring v. Clarke, 5 How. 441, 460, 46 U.S. 441, 460, 12 L.Ed. 226.

To put the same thoughts more affirmatively, we can begin with the Constitution, statutes, and Rules of Civil Procedure. The Constitution leaves to Congress the power to decide whether, aside from "suits at common law" covered by the Seventh Amendment, a "civil action" shall be heard by a jury. In maritime torts Congress has never expressly authorized a jury trial except in the anomalous provisions of Rev.Stat. § 566 governing cases involving Great Lakes vessels.[4] Congress did not provide for a jury trial in the "saving to suitors" clause in § 9 of the Judiciary Act of 1789. It merely permitted jury trials where the common law afforded such a remedy. See Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 384, 38 S.Ct. 501, 62 L.Ed. 1171. And the common law does not afford as a remedy an action wherein plaintiff forfeits that part of his damages attributable to his own lack of due care. Such an action is in all respects, remedy as well as right, the

---

4. Judge Magruder's citation of Rev.Stat. § 566 does not seem sufficiently to emphasize its limited applicability. The statute is so narrowly drawn as to relate only to Great Lakes vessels. Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 234 F.2d 253, 257. And it is a statute which was at once recognized as a sport by Judge Brown in The Empire, D.C.Mich. 19 F. 558. And this critical appraisal remains valid, although Judge Brown's opinion in which it was expressed was overruled in The Western States, 2 Cir., 159 F. 354.

creature of federal law. Nor did Congress impliedly sanction a jury trial when it left unaltered the Rules of Civil Procedure, 28 U.S.C. They have no relevant provision authorizing a jury trial. Rule 38, cited in Doucette, merely preserves such "right of trial by jury as [is] declared by the Seventh Amendment to the Constitution or as [is] given by a statute of the United States". The mere fact that a case is a "civil action" is no ground for an inference that a party has a right to claim a jury. Otherwise, every civil action resembling what used to be called a suit in equity would fall within the same inference.

From the above discussion it follows that in the case at bar plaintiff is not entitled to go to the jury on his unseaworthiness count by virtue of 28 U.S.C. § 1331. He is, however, entitled to go to the jury on that count because it is pendent to a Jones Act count.

We turn now to the third count involving a claim of less than $3,000 for maintenance and cure.[4a] The only question is whether there is pendent jurisdiction so that this third count hangs on to the Jones Act count and goes with it to the jury.

In this Circuit a considered dictum favors a jury trial on the basis of pendent jurisdiction. Doucette v. Vincent, 1 Cir., 194 F.2d 834, 840 note 5. The Third Circuit in Jordine v. Walling, 3 Cir., 185 F.2d 662, followed[5] by the Seventh Circuit in Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 191 F.2d 82, denied the applicability of the pendent jurisdiction theory because it regarded the maintenance and cure count as separate and independent from the Jones Act count. Judge Maris noted that the different items of damage were recoverable under the two counts; that the Jones Act count sounded in tort and the maintenance count in contract; and that whereas in the Jones Act count the seaman must, in the maintenance count he cannot, present all losses expected to occur in the future. Judge Maris' view has been sharply criticized by commentators. 5 Moore's Federal Practice par. 38.35[6] pp. 283–285. Gilmore and Black, The Law of Admiralty, p. 262. The contrary view, expressed in Chief Judge Magruder's opinion in Doucette has strong practical advantages.

The basic facts essential to a maintenance and cure recovery are all usually included within a Jones Act or an unseaworthiness recovery. That is, on a Jones Act or unseaworthiness count the seaman may and ordinarily does show his contract relationship, his hospital and medical bills, and (as a guide to ascertaining earning capacity) his rate of wages and maintenance.[7] If the seaman prevails on the Jones Act or unseaworthiness count and gets judg-

4a. If more than $3,000 were involved then in this Circuit, it would be regarded as a claim on a maritime contract arising under the Constitution and laws of the United States and so within this District Court's 28 U.S.C. § 1331 jurisdiction. Doucette v. Vincent, 1 Cir., 194 F.2d 834, 840. Contrary holdings are Jordine v. Walling, 3 Cir., 185 F.2d 662 and Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 191 F.2d 82.

5. It is not clear what position the Second Circuit takes. Although in that circuit the district judges have been allowing a jury trial, the Court of Appeals seems to favor a practice of having the judge sitting in admiralty hear the maintenance and cure count at the same time that, and on the same evidence as, the jury hears the Jones Act count. Weiss v. Central Railroad Co., 2 Cir., 235 F.2d 309, 310, note 1; Gonzales v. United Fruit Co., 2 Cir., 193 F.2d 479, 480, note 1.

6. Moore fears that the doctrine of Jordine v. Walling precludes joinder in one complaint of the Jones Act and maintenance counts and may involve double appeals. Perhaps this is an ill-founded criticism. See McAfoos v. Canadian Pac. Steamships, 2 Cir., 243 F.2d 270.

7. In exceptional cases the seaman may seek in his Jones Act cause of action to recover only for pain, or for pain and diminution of earning capacity, leaving to a later maintenance and cure action his claim for hospital and medical bills. Smith v. Lykes Brothers-Ripley S.S. Co., Inc., 5 Cir., 105 F.2d 604.

ment upon all types of damage available to him, without any discount for contributory negligence, there is nothing left for him to recover on account of cure and maintenance up to the time of the trial, at least. McCarthy v. American Eastern Corp., 3 Cir., 175 F.2d 727, 729. If he completely fails on the Jones Act and unseaworthiness counts, and on those counts defendant's verdicts are returned, he still can recover for maintenance and cure. Pacific Steamship Co. v. Peterson, 278 U.S. 130, 138, 49 S.Ct. 75, 73 L.Ed. 220. But the not unusual situation is that the seaman recovers under the Jones Act count or the unseaworthiness count or both, and the Court does not know whether the jury has reduced plaintiff's recovery on account of contributory negligence, (Stendze v. The Neptune, D.C.D.Mass., 135 F.Supp. 801) nor whether the jury has allowed recovery solely for pain, whether if the jury has allowed for diminution of earning capacity it has fixed a terminal date nearer the day of the accident than the last day on which maintenance would be due, nor whether the jury has allowed for hospital and doctors' bills paid by third persons, an item which possibly may be recoverable under a Jones Act count (see Restatement, Torts § 920 comment (e)) even when it is not recoverable on a maintenance count. See Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 82 L.Ed. 993; Bailey v. City of New York, 2 Cir., 153 F.2d 427; Vitco v. Joncich, D.C.S.D.Cal., 130 F.Supp. 945; Gomes v. Eastern Gas & Fuel Associates, D.C.D.Mass., 127 F.Supp. 435, 437 explaining the difference between Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 and Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 95 A.L.R. 571. For other examples of possible duplication and doubt, see Smith v. Lyke Brothers-Ripley S. S. Co., 5 Cir., 105 F.2d 604; Muise v. Abbott, 1 Cir., 160 F.2d 590; and Gomes v. Eastern Gas & Fuel Associates, D.C.D.Mass., 132 F. Supp. 29, 31. To be sure, a judge could take steps to avoid this uncertainty. He could put to the jury special interrogatories, authorized by F.R.Civ.P., Rule 49(b), to learn (1) whether plaintiff was contributorily negligent; (2) if so, what percentage of the damages was caused by contributory negligence; (3) what damages the jury allowed on account of (a) medical and hospital bills, (b) diminution of earning capacity, and (c) pain and suffering. With answers to such questions he would have the necessary data to add anything that was appropriate for "cure". But even then he might have inadequate data to know how much additional maintenance could be awarded without duplication.

It is not a satisfactory way of avoiding this dilemma for the judge to keep for himself the decision on cure and maintenance, and to charge the jury that it may not allow recovery on account of any medical or hospital expenses, and that in estimating plaintiff's diminution of earning capacity it should credit defendant with whatever maintenance award the judge had decided was just. First, this method assumes that in his charge the judge tells the jury exactly what he has awarded the seaman for maintenance. If the judge does not do this, then there will be a possible duplication of damages. If the judge does tell the jury what he has awarded for maintenance, no matter how the judge phrases his charge, the probabilities are that the jury will regard the judge's award as an expression of his view as to the length of time plaintiff was incapacitated. Moreover, the plaintiff may well fear that a statement by the judge of his award will prejudice his chances of getting the largest possible verdict from the jury. Second, this method assumes that the award which the judge will make for medical bills equals the award which the jury would make. Ordinarily this assumption is justified. Often the parties stipulate the amount of medical bills. But in the exceptional case where questions are raised as to whether plaintiff needed the medical attention he received or whether the medical bills are reasonable, those questions ought to go to

**306**

the jury under the Jones Act count or the unseaworthiness count, and should not be reserved by the judge.

 It, therefore, seems to me that upon the request of any party to a maintenance and cure controversy, the proper course is for the judge to allow the jury to consider the maintenance and cure count with the Jones Act and unseaworthiness count; to instruct the jury to deal first with the maintenance and cure count; to tell them to make an award on that count without discount for contributory negligence, if any; to caution them to take into account in any Jones Act or unseaworthiness recovery premised on diminution of earning capacity the amount they, the jury, have allowed for maintenance; and to permit them to allow recovery on the Jones Act and unseaworthiness counts of any hospital and doctors' bills which are *appropriately* considered on those counts but not on the maintenance and cure count, *if* any such bills there be.

For the above reasons I have determined to allow a jury trial on all three counts of the complaint.