## MULLEN v. FITZ SIMONS & CONNELL DREDGE & DOCK CO.

### No. 10322.

United States Court of Appeals
Seventh Circuit.

July 23, 1951.

Writ of Certiorari Denied Nov. 26, 1951.

See 72 S.Ct. 173.

See also 172 F.2d 601.

Irving Breakstone, Chicago, Ill., for appellant.

Edward B. Hayes, Chicago, Ill., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

On October 10, 1947, plaintiff, a seaman on the Great Lakes, filed his complaint under the Jones Act, 46 U.S.C.A. § 688, for personal injuries sustained by him on September 29, 1947, while working as a deckhand on the tug boat Roche, of which defendant was the owner. It contained three counts. Count one charged defendant's negligence and the unseaworthiness of the tug caused plaintiff's injuries; counts two and three asked for cure and maintenance, respectively. At the outset of the trial, plaintiff elected to proceed on the charge of negligence alleged under the Jones Act. On that count the case was tried by a jury.

At the close of plaintiff's case, defendant moved for a dismissal on all counts, upon which motion the court reserved its ruling. At the close of all the evi-

dence the defendant, by oral motion, moved for a directed verdict, upon which motion the court also reserved its ruling. The case was then submitted to the jury, which returned a verdict of $4,500 in favor of the plaintiff.

On April 7, 1950, the day following the return of the verdict, the court set the reserved motions for argument on April 26, 1950, and after hearing arguments thereon, sustained the motions and entered a judgment for defendant. This appeal followed.

In his brief plaintiff says: "The errors relied on arise out of the judgment of the court dismissing the plaintiff-appellant's case on the merits and sustaining the defendant's motion for a directed verdict, and in failing to find that plaintiff's case was made out by substantial evidence sufficient to sustain the material controverted issues in favor of the plaintiff."

In support of its motion for a directed verdict, defendant contends in part: (1) there is no proof of any negligence on its part which was the cause of plaintiff's injury; (2) there was no evidence that the equipment and appliances aboard the tug were defective in any particular; (3) plaintiff himself was guilty of the negligence which was the sole proximate cause of his injury; and (4) plaintiff's injury was caused solely by his failure to perform his own duties as a deckhand, without negligence on the part of defendant.

The contentions presented require a brief statement of the evidence.

Plaintiff is an able-bodied seaman with thirty-three years experience on the Great Lakes. On September 22, 1947, he was employed as an extra by defendant, working as a deckhand on the tug boat John J. Roche, which was engaged in towing loaded scows from Indiana Harbor into Lake Michigan for dumping. The tug was about 84 feet long overall, 20 feet wide, 12½ feet in depth, of which 14 inches was above the water line. Above the deck's level was a deck house and forward, a pilot house. The deck house had several doors which, when closed, kept out the lake water. Among his duties, the deckhand was supposed to close these doors in rough weather. In the middle of the deck house, on the starboard side, was a fire hole door, in addition to the door to the pilot house. Next, astern to the fire hole door, was an engine room door, and farthest back, at the end of the deck house, was a galley door. Inside this door, steps led down to the galley below the deck, a hand rail was provided for use on these steps. The galley door was about three feet wide and five feet high. It was made of steel and swung outward, with hinges on the side toward the front of the tug. A hook attached to the deck house wall could be hooked over the top of this door to keep it open.

A captain, engineer, two firemen, and deckhand, as required by the steamboat inspectors, made up the crew. Plaintiff was the deckhand. The boat was regularly inspected by the United States Steamboat Inspectors, as required by law.

Handling mooring lines, helping the fireman in dumping ashes from the boiler room, and closing hatches, when necessary to keep the tug from taking water in rough weather, were among the duties of the plaintiff as deckhand.

The tug was docked in Indiana Harbor, an artificial harbor, formed by breakwaters facing the lake with a gap, through which vessels pass, near the center of the Harbor. At the gap of this inner breakwater, a green light is fixed. A second breakwater projects directly into the lake proper at the end of which is fixed a white light. Going toward the lake, after passing the gap in the inner breakwater, marked with the green light, a ship is in the lake proper. Passing beyond the breakwater with the white light, puts the vessel farther out into the lake.

After arriving for work at the Indiana Harbor dock on the morning of September 29, 1947, plaintiff saw that the lake was heavy and rough. From the dock, plaintiff could see the water spray striking the top of the catwalk astride the breakwater

enclosing the harbor. Within the harbor the water was choppy. The number of scows that can be towed on a given day depends on the weather. The condition of the weather can best be determined from an examination out in the lake itself. This is called "going out to look at the weather." Plaintiff had gone out to look at the weather on tug boats many times before.

A civil engineer employed by defendant, and a scowman, who rode loaded scows, accompanied the crew of the Roche when the captain gave the order to go out and look at the weather. When the whistle signal was given, plaintiff cast off his mooring lines, one of the firemen cast off the other line, and the tug proceeded toward the breakwater gap which afforded access to the lake. A standing order aboard the Roche required the deckhand to close up the tug in heavy weather. Plaintiff was told about the standing order, and also testified it was his job as deckhand to do that. He further testified that the tug should have been closed up in weather such as he could see from the dock before he started out into the lake. The captain testified that he told plaintiff personally that standing orders required him to close up in heavy weather. There was no contradiction to the testimony given by the captain as to the standing order.

After passing the gap in the breakwater, the Roche entered the lake and ran into a heavy sea, which impeded its speed. The decks of the Roche were awash from waves of water. At times, the waves hit the breakwater causing a spray of water forty to fifty feet high. Plaintiff could see that the tug was going beyond the end of the breakwater projecting into the lake. As the tug proceeded, plaintiff said he was dumping ashes into the lake and when it became too rough to remain on deck he headed inside by way of the galley door, that being then the last door astern on the starboard side. A wave of water followed him in as he stood on the first or second step leading downward to the galley, with his hand between the door jamb and the hinged side of the galley door. While in this position the door closed, pinching his right hand. No one on board witnessed the accident. A hand rail was provided for holding on, located on the steps directly in front of plaintiff as he stood there facing forward. Plaintiff said he never used the hand rail and he did not use it on this occasion. Plaintiff said the accident happened as the tug was turning around, stating that he jumped into the galley stairway before the tug began to turn.

There is no proof that the hook used to keep the galley door open was defective. Besides, plaintiff abandoned his charge of unseaworthiness and elected at the outset of the trial to proceed on his charge of negligence. He produced no evidence on unseaworthiness. The record shows no proof of negligence on the part of defendant. Damages may be recovered under the Jones Act only for negligence. DeZon v. American President Lines, 318 U.S. 660–671–672, 63 S.Ct. 814, 87 L.Ed. 1065. It is clear to us that plaintiff failed to sustain his burden of proof on his claim of negligence.

We believe that the trial court properly directed a verdict on count one of the complaint, because viewing the evidence in the light most favorable to plaintiff, together with all reasonable inferences and deductions which may be drawn therefrom, Giliberto v. Yellow Cab Co., 7 Cir., 177 F.2d 237; Reno Sales Co., Inc., v. Pritchard Industries, Inc., 7 Cir., 178 F.2d 279, it appears that his injury was caused solely by his failure to perform his known duty as a deckhand. He did not shut the galley door, when he saw that the tug was going out into the lake in a heavy sea. The evidence convincingly shows that his own negligence was the proximate cause of his injury.

In his complaint, plaintiff joined with his count for damages for negligence, under the Jones Act, counts two and three for cure and maintenance which he had a right to do. He asked for and received a jury trial on the negligence count, and also submitted what evidence he had on cure and maintenance to the jury with-

out complaint by defendant. The trial court was in error in permitting him to so do. He was entitled to a jury trial on the negligence count, but the claim for cure and maintenance should have been submitted to the court as an admiralty tribunal, without the intervention of a jury.

■ Under maritime law, cure and maintenance are rights given to seamen as incidents of their employment, The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, and are entertained in courts of admiralty and maritime jurisdiction. Jordine v. Walling, 3 Cir., 185 F.2d 662; Modin v. Matson Navigation Co., 9 Cir., 128 F.2d 194. The obligation for cure and maintenance is, as Mr. Justice Cardozo stated in Cortes v. Baltimore Insular Line, 287 U.S. 367, 371–372, 53 S. Ct. 173, 174, 77 L.Ed. 368:

"* * * imposed by the law itself as one annexed to the employment. * * *

"The duty, * * * is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties." * * *

■ Cure means medical care and attention, and maintenance means subsistence during disability. Negligence is not an element of cure and maintenance, since the obligation to supply them arises *ex contractu*.

Plaintiff insists that under 172 F.2d 601, a former appeal to this court, in this case, he was entitled to have all three counts tried by a jury. We think not. Defendant urges that a practice has arisen among plaintiffs of joining maritime causes of action for cure and maintenance with causes of action under the Jones Act, brought on the law side of the federal courts, as was done in this case. We can see no objection to such practice if the evidence in the cure and maintenance action is tried by the court sitting in admiralty in the absence of the jury. Here we have, first, an action in count one under a federal law, the Jones Act; second, an action for cure and maintenance under the maritime law (counts two and three)

two separate and distinct actions. The District Court had jurisdiction of the first action on the law side and of the second action on the admiralty side of the court, diversity being absent.

In a well-reasoned opinion, the United States Court of Appeals for the Third Circuit, in Jordine v. Walling, 185 F.2d 662, on page 671, with facts somewhat similar to the facts in this case, said: "We conclude that claims for compensatory damages under the Jones Act and for maintenance and cure constitute two separate and distinct causes of action within the doctrine laid down in Hurn v. Oursler [289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148], only one of which, the claim under the Jones Act, is federal in character within the meaning of that doctrine. For the purposes of the application of that rule to the jurisdiction of a federal district court under Section 1331 a cause of action arising under the maritime law is to be regarded as nonfederal in character since, as we have already pointed out, it does not arise under the Constitution or laws of the United States within the meaning of that section. It follows that in the absence of diversity of citizenship the district court did not have jurisdiction to entertain the plaintiff's count for maintenance and cure in a civil action tried to a jury."

We agree with the reasoning of the Third Circuit, and believe what was said there aptly applies to this case.

■ Accordingly, the judgment of the trial court dismissing counts two and three for cure and maintenance is reversed, and said counts are remanded to the admiralty docket of that court.

Although the record discloses that defendant paid plaintiff's hospital and medical expenses, and no proof appears of any amount owing plaintiff for cure and maintenance, such findings, if a fact, should be made by the court sitting in admiralty. We do not think a new trial and re-introduction of evidence is necessary because the trial judge who heard the evidence at the trial has full power, sitting in admiralty, to make proper find-

ings of fact and conclusions of law appropriate to dispose of the claim for cure and maintenance involved in count's two and three. Accordingly, upon the remand of counts two and three of plaintiff's complaint, and the transfer thereof to the admiralty docket, the trial judge who presided at the previous trial, should he deem it to be advisable and in the interests of justice, so to do, may consider and decide plaintiff's claim for cure and maintenance upon the evidence heretofore taken before him.

We have considered other points urged by the parties and find them without merit.

As to count one, the judgment of the District Court is affirmed. As to counts two and three, the judgment is reversed and remanded with directions to proceed further therein in a manner consistent with this opinion.