**MULLEN v. FITZ SIMONS & CONNELL DREDGE & DOCK CO.**

No. 10624.

United States Court of Appeals, Seventh Circuit.

Oct. 7, 1952.

Irving Breakstone, Chicago, Ill., for appellant.

Edward B. Hayes, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This case has been before this court on two prior occasions. The first appeal, decided in December 1948, and reported in 172 F.2d 601, reversed an order of the District Court which dismissed plaintiff's cause of action for failure to state a claim on which relief could be granted. The complaint filed under the Jones Act, 46 U.S.C.A. § 688, sought damages for personal injuries sustained by plaintiff while working as a deckhand on the tug boat "Roche" of which defendant was owner. It contained three counts:—count one charged that defendant's negligence and the unseaworthiness of the tug caused plaintiff's injuries; counts two and three asked for cure and maintenance respectively. After the first remand plaintiff proceeded under the charge of negligence alleged under the Jones Act. The case was tried before a jury.

At the close of plaintiff's case defendant moved for a dismissal on all counts, upon which motion the trial court reserved ruling. At the close of all the evidence the defendant moved for a directed verdict, upon which ruling was likewise reserved by the trial court. After a verdict for plaintiff, assessing his damages at $4500 had been returned by the jury, the District Court sustained defendant's motions, on which ruling had been reserved, and entered judgment for the defendant. 11 F.R.D. 348. The second appeal, reported in 191 F.2d 82, followed.

On that appeal this court sustained the ruling of the trial judge on the first count, under the Jones Act, because the evidence disclosed that plaintiff's injuries were caused by his failure to perform his known duties as a deckhand. On the second and third counts (for cure and maintenance) we remanded the cause to the admiralty docket of the District Court because those counts should have been submitted to the court as an admiralty tribunal without the intervention of a jury.

On remand, counts two and three were placed on the admiralty docket of the District Court. Thereafter, the District Court having considered the arguments of counsel, stating that the court had heard all the evidence at the trial and that the plaintiff had offered no new evidence, entered its findings of fact and conclusions of law in admiralty. On April 2, 1952, it ordered that counts two and three of the complaint sounding in admiralty for cure and maintenance be dismissed on the merits. All questions of costs were reserved until the further order of the court.

In this appeal from that order, it is contended that the judgment of the District Court should be reversed and judgment ordered in behalf of the plaintiff-appellant for $1606.21, with interest at 7% from September 29, 1947, to date, or, in the alternative that such judgment should be entered by this court hearing the matter, *de novo*. It is pertinent to note at the outset that both parties and their respective attorneys, as well as the trial court, have continued to denominate the parties as plaintiff and defendant notwithstanding the transfer of the cause to the admiralty docket. To avoid confusion we intend to continue these designations.

Plaintiff-appellant now insists: (1) that under the facts and circumstances disclosed in this cause, plaintiff was not guilty of wilful disobedience of orders or of wilful misbehavior; (2) that plaintiff was not obliged to accept an offer of treatment in the Marine Hospital by the United States Public Health Service, but may require the vessel to fulfill its obligation in reference to cure; and (3) that there is sufficient evidence in the record to enable the court to find the amount due for cure and maintenance.

The findings of fact entered by the trial court contain 14 distinct paragraphs. The findings numbered from one to eight inclusive are substantially identical with the statements made by this court, 191 F.2d 82, 83, 84, in its recital of the disclosures made by the evidence on the second appeal.

Findings from nine to fourteen inclusive are as follows:

"9. Besides the uncontradicted standing order, the captain told Mullen on the very occasion to close up the tug.

"10. While Mullen said he was dumping ashes, the two firemen, one of

whom had no connection with defendant at the time of trial or for some years theretofore, who would have known if ashes were being dumped, and with one of whom Mullen claimed he was working, testified that no ashes were dumped that day. It does not appear from the weight of substantial, credible evidence what Mullen was doing out on deck. The ashes were in the fire hole, which had its own door.

"11. When plaintiff was employed he did not live on the tug, but at home. He was an extra worker and his employment was uncertain. On the day of the accident, September 29, 1947, the tug Roche was working out of Indiana Harbor, and plaintiff was hospitalized there. Tug work is seasonal. The plaintiff testified, referring to the work season, that this was late, that the job could end at any time, and if it did he would probably be out of work for quite a while. He left the hospital, he says, on or about October 8, 1947, returning to his home in Chicago, Illinois, where the services of the Marine Hospital of the United States Public Health Service were available to him for cure and maintenance without charge, as a seaman. After leaving the hospital plaintiff voluntarily elected to visit Indiana Harbor, Indiana, from time to time for treatment, consisting of the application of heat, instead of availing himself of the Chicago Marine Hospital, whose facilities were mentioned to him by defendant in writing for anything he might require as cure and maintenance. It does not appear that the heat treatments would have prevented plaintiff's employment if there had been any employment for him.

"12. Plaintiff says that at some time before December 26, 1947, his doctor wanted him to go back to work because it would be good for his hand, but plaintiff refused to do so, insisting on some kind of a release which his doctor gave him on December 26, 1947. Plaintiff did not work during this off-season, there being no 'call' for him.

He did work as a deckhand throughout the next season, and the season following, at increased wages, but again he did no work in the following off-season, there being no call for him.

"13. Plaintiff's hospital and medical bills have been paid for him, and no proof appears of any amount owing plaintiff for maintenance and cure.

"14. Since the mandate plaintiff has been asked to state his position and has been challenged by defendant on brief to indicate any new evidence he might desire to offer, or any new evidence not merely cumulative or not available by proper diligence at the trial. Plaintiff has not specified any new evidence."

All the findings of fact made by the admiralty court are supported by substantial evidence.

In a very recent case, Koehler v. United States, 7 Cir., 187 F.2d 933–936, this court had occasion to say:

"Hundreds of citations might be given where the rule is categorically stated that on an appeal in admiralty there is a trial *de novo;* however the qualification of that general rule is just as widely recognized, and that is, that the findings of the district court will be accepted by the appellate court unless clearly against the preponderance of the evidence. Leathem Smith-Putnam Navigation Co. v. Osby, 7 Cir., 79 F.2d 280, 282; Kulack v. The Pearl Jack, 6 Cir., 178 F.2d 154, 155; Great Lakes Towing Co. v. American, S. S. Co., 6 Cir., 165 F.2d 368."

In Farrell v. United States, 336 U.S. 511, on pages 515, et seq., 69 S.Ct. 707, 709, 93 L.Ed. 850, it is said:

" * * * In Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 932, 87 L.Ed. 1107, the Court pointed out that logically and historically the duty of maintenance and cure derives from a seaman's dependence on his ship, not from his individual deserts, and arises from his disability, not from anyone's fault. * * *

"It has been the merit of the seaman's right to maintenance and cure

that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations. The seaman could forfeit the right only by conduct, whose wrongful quality even simple men of the calling would recognize—insubordination, disobedience to orders, and gross misconduct."

■ The plaintiff-appellant, in the case now under consideration, was not entitled to maintenance and cure from the defendant-appellee because the court found that his injury resulted from "his" wilful disobedience of orders and culpable failure to perform his known duty in the service of the ship. Warren v. United States, 340 U.S. 523–528, 71 S.Ct. 432, 95 L.Ed. 503.

Nevertheless, the record in the present case shows that shortly after the injury to plaintiff-appellant, the tug returned to the harbor, and he was taken by an agent of the defendant-appellee to a nearby infirmary and from there to Saint Catherine's Hospital, at East Chicago, Indiana. He remained in the hospital until October 8, 1947; all his medical and hospital expenses were paid.

From October 8, 1947, to late in December, the defendant continued to pay his expenses for treatment as an out-patient at Indiana Harbor Clinic. He insisted upon, and on December 26, 1947, actually received a release from the doctor in charge of his treatments. Plaintiff admitted that he paid nothing for medical or hospital expenses arising from the accident.

This present suit was instituted on October 10, 1947, two days, after his discharge as a resident patient of the hospital.

On October 27, 1947, a hospital ticket was sent to and received by the plaintiff. This entitled him, as a seaman, to free medical care and the facilities of the Public Health Service. Such facilities, as well as a Marine hospital, were available in Chicago. However, plaintiff continued to travel, two or three times a week, to Indiana Harbor for treatment and now claims $165.33 transportation charges for such trips as a proper item due him for cure and maintenance.

In United States v. Loyola, 9 Cir., 161 F.2d 126, it was held that the shipowner fully performed its contract to provide maintenance and cure by giving the injured seaman a certificate of admission to the Marine Hospital, at San Francisco. The court says, 161 F.2d on pages 127–128:

"In Marshall v. International Mercantile Marine Co., 39 F.2d 551, 553, the Second Circuit held that a stewardess who refused hospital treatment offered by the shipowner could not recover for her maintenance and cure. It followed its statement of the law to that effect in The Bouker No. 2, 2 Cir., 241 F. 831, 835. Citing these cases the Supreme Court in Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 531, 58 S.Ct. 651, 654, 82 L.Ed. 993, states ' * * * Moreover, courts take cognizance of the marine hospital service where seamen may be treated at minimum expense, in some cases without expense, and they limit recovery to the expense of such maintenance and cure as is not at the disposal of the seaman through recourse to that service. * * * ' "

An annotation in 13 A.L.R.2d, page 628, says:

"It would seem obvious that a seaman cannot recover for treatment and medical services furnished to him gratuitously by a United States Marine Hospital. It is maintained for the purpose of discharging the duty of shipowners to furnish such care. See e. g., The Balsa, 3 Cir., 1926, 10 F.2d 408; Robinson v. Swayne & Hoyt, Inc., D.C.Cal.1940, 33 F.Supp. 93; Fegan v. Lykes Bros. S. S. Co., La.App.1940, 195 So. 392, revs. on another point 198 La. 312, 3 So.2d 632."

Since it has been determined that plaintiff's injury resulted from his wilful disobedience of orders and culpable failure to perform his known duties in the service of the ship, and since the record discloses that medical and hospital charges for treatment were actually furnished him, and since he could have had any additional treatment required without costs through the facilities

of Public Health Service, we are constrained to hold that the trial court sitting as a tribunal in admiralty properly dismissed his action for maintenance and cure. Its decree is therefore affirmed.