James Hatnick **MEIKLE**, a minor 17 years of age, who sues by his next friend, Roy L. Sykes, Plaintiff,

v.

**LEEDS SHIPPING COMPANY, Ltd. and Sir William Reardon Smith & Sons, Ltd., Defendants.**

**No. 561.**

United States District Court
E. D. Virginia,
Newport News Division.

June 19, 1957.

Jett, Sykes & Howell, Henry E. Howell, Jr., Norfolk, Va., for plaintiff.

Seawell, Johnston, McCoy & Winston, Charles R. Dalton, Jr., Norfolk, Va., for defendant.

HOFFMAN, District Judge.

This action was instituted in the Circuit Court for the City of Newport News by the infant plaintiff, a citizen of Great Britain, suing by his next friend, against Leeds Shipping Company, Ltd., and Sir William Reardon Smith & Sons, Ltd., both foreign corporations, to recover damages for personal injuries and loss of earnings alleged to have been sustained while plaintiff was attempting to descend a ladder from the defendants' steamship Eastern City to a dock at the Chesapeake & Ohio piers at Newport News, Virginia. The plaintiff allegedly fell, striking a "bumper log" or "camel" tied to the side of the dock and floating in the water.

Suit was commenced as a civil action in the state court, plaintiff basing his claim for recovery in terms of negligence and unseaworthiness. Upon removal by defendants to this Court, plaintiff has filed a motion to remand the action to the state court. Plaintiff contends that since the action is between aliens, neither of whom is a citizen of any state of the United States, there is no right of removal under 28 U.S.C.A. § 1441(b). Defendants contend the removal proper since the claim asserted, based on general maritime law, arises under the Constitution or laws of the United States within the meaning of the removal statute.

Section 1441(b) states grounds for removal of actions as follows:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

The principal contention advanced to support the claim that jurisdiction exists on the civil side is predicated upon the assertion that all claims arising under general maritime law and cases "wherein the matter in controversy * * * arises under the Constitution, laws or treaties of the United States".

It is apparent from the authorities that the question is not free from doubt. The Fourth Circuit has not yet determined whether a district court may entertain an action at law predicated upon a maritime tort in the absence of diversity of citizenship. Varying aspects of the problem have been resolved in other Circuits. The Second, Third, Seventh and Ninth Circuits[1] have considered the question and concluded that, in the absence of diverse citizenship, a federal court is without jurisdiction to entertain an action at law based on the general maritime law as one arising under the Constitution or laws of the United States.

The First Circuit has also considered the question, concluding in Doucette v. Vincent, 1 Cir., 194 F.2d 834, that claims under the general maritime law arise under the Constitution within the meaning of Title 28 U.S.C.A. § 1331.

In Benedict on Admiralty, 6th Ed. Vol. 4, 1957 Supp., p. 44, the author leans to the conclusions as set forth by the Third Circuit in Jordine v. Walling, 185 F.2d 662, by stating:

"The common law side of the federal district court can not entertain a suit for maintenance and cure or for indemnity for injuries under the general maritime law unless the jurisdictional limit amount of $3,000 can be shown, and unless diversity

---

1. Paduano v. Yamashita Kisen Kabushiki Kaisha, 2 Cir., 221 F.2d 615; Jordine v. Walling, 3 Cir., 185 F.2d 662; Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 191 F.2d 82, certiorari denied 342 U.S. 888, 72 S.Ct. 173, 96 L.Ed. 666; Kavourgias v. Nicholaou Co., Ltd., 9 Cir., 148 F.2d 96.

of citizenship exists. These jurisdictional requirements do not apply in a Jones Act suit."

The authorities are well cited in Doucette, Jordine and Paduano. It is apparent that this conflict will ultimately have to be resolved by the United States Supreme Court as was perhaps indicated in Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 410, footnote 4, 74 S.Ct. 202, 98 L.Ed. 143.

It is the opinion of this Court that the view adopted by a majority of the circuits is a correct interpretation of the law. The ultimate solution must necessarily depend upon a determination of whether Congress intended to include in its grant of "case arising" jurisdiction to federal courts the power also to adjudicate claims made pursuant to general maritime law. Article III, Section 2 of the Constitution of the United States provides:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

In American Insurance Company v. Canter, 1 Pet. 511, 26 U.S. 511, 7 L.Ed. 242, Chief Justice Marshall pointed out that the separate provision for jurisdiction of cases in law and equity arising under the Constitution and laws on the one hand, and cases of admiralty and maritime jurisdiction on the other, contemplated distinct classes of cases so that the grant of jurisdiction over one class did not necessarily confer jurisdiction over the other. As was conceded in Doucette v. Vincent, supra, the distinct classification of cases was not redundant. In the American Insurance Company case, Chief Justice Marshall marks the distinction between the separate constitutional authorization of federal jurisdiction in the following language:

"The constitution and laws of the United States give jurisdiction to the district courts over all cases in admiralty; but jurisdiction over the case does not constitute the case itself. We are, therefore, to inquire, whether cases in admiralty, and cases arising under the laws and constitution of the United States, are identical. If we have recourse to that pure fountain from which all the jurisdiction of the federal courts is derived, we find language employed which cannot well be misunderstood. The constitution declares, that 'the judicial power shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, or other public ministers and consuls; to all cases of admiralty and maritime jurisdiction'. The constitution certainly contemplates these as three distinct classes of cases; and if they are distinct, the grant of jurisdiction over one of them, does not confer jurisdiction over either of the other two. The discrimination made between them, in the constitution, is, we think, conclusive against their identity. If it were not so, if this were a point open to inquiry, it would be difficult to maintain the proposition that they are the same. *A case in admiralty does not, in fact, arise under the constitution or laws of the United States."*

Thus, the Supreme Court early in its history pointed out that the class of cases within the "case arising" clause was wholly distinct from those included within the phrase "admiralty and maritime Jurisdiction" within the meaning of the Constitution.

The Judiciary Act of 1875 was the first broad grant of powers to federal courts to adjudicate all civil actions arising under the Constitution or laws of the United States, same having been taken from Article III, Section 2 of the Constitution itself. Such language is still to be found in 28 U.S.C.A. § 1331. This grant of broad "case arising" jurisdiction to the lower federal courts by the Judiciary Act is, as was pointed out in Paduano, supra, no broader than that authorized in the Constitution itself. Therefore, the Supreme Court decisions, including that of American Insurance Co. v. Canter, supra, interpreting Article III, Section 2, should also apply to and control interpretations of the present § 1331. Counsel have not cited, nor has this Court's independent research disclosed any case evidencing the overruling or failure to follow the Supreme Court's earlier exposition on this division of jurisdiction; nor does the legislative handling of the admiralty and maritime matters indicate a congressional intent to unite the admiralty and the maritime jurisdiction of the federal courts with the grant of "case arising" jurisdiction as is pointed out in Paduano, supra, wherein the court said:

"First, the primary policy for investing the federal courts with 'arising under' jurisdiction, viz., to insure the availability of a forum designed to minimize the danger of hostility toward, and specially suited to the vindication of, federally created rights, does not support and, indeed, points to the absence of any necessity for the inclusion of admiralty and maritime matters, since such a forum had always been available. Second, from 1875 to the present, Congress has continued to provide for a wholly separate admiralty and maritime jurisdiction and has authorized the promulgation by the Supreme Court of separate rules governing proceedings in admiralty. Third, whenever the Congress has deemed it desirable to afford claimants the right to maintain an action at law or the right to trial by jury in maritime matters even in the absence of diversity, it has considered it necessary to make specific statutory grants of these rights." [221 F.2d 618.]

Thus, historically separate bases of a federal court's jurisdiction have been strictly maintained. A brief review of the recent cases in which the problem has been considered will illustrate that the majority of courts in which the question has been presented have been of the opinion that claims arising from, and based on, the general maritime law do not "arise under" the Constitution or laws of the United States within the meaning of § 1331.

In Jordine v. Walling, supra, the action was instituted in the United States District Court for the Eastern District of Pennsylvania for damages for negligence resulting in injuries to plaintiff's decedent under the Jones Act, 46 U.S.C.A. § 688 and for maintenance and cure under the general maritime law. Diversity of citizenship was lacking. At the close of plaintiff's case the count under the Jones Act was dismissed, and the count for maintenance and cure was subsequently submitted to the jury which rendered a verdict in favor of plaintiff upon which judgment was entered. The Third Circuit held, in reversing the judgment and removing the case to the admiralty side of the court, that, in the absence of diversity of citizenship, the district court did not have jurisdiction to entertain plaintiff's count for maintenance and cure in a *civil* action, and that though the claim asserted was based on general maritime law, it was not one arising under the Constitution or laws of the United States within the meaning of § 1331.

In holding the claim did not arise under the laws of the United States, the Court had this to say:

"It is settled, however, that cases arising under the 'laws * * * of the United States' to which the section refers are only such as grow out of the legislation of Congress and involve the validity, construction or application of acts of Congress. They, therefore, do not include cases arising under those general principles of the maritime law which have not been modified by Congressional legislation. This is, of course, not to say that the rules of the maritime law may not be altered by Congress or that if so altered they will not thereby become 'laws * * * of the United States' within the meaning of Section 1331. But the right to maintenance and cure, with which we are here concerned, is a purely maritime right which has not been modified or enlarged by an act of Congress. It follows that a case of maintenance and cure does not arise under the laws of the United States within the meaning of Article III, Section 2, of the Constitution and Section 1331 of Title 28 U.S.C." [185 F.2d 667.]

In answering the contention that the claim was one arising under the Constitution of the United States, the same court said:

"For cases arising under the Constitution within the meaning of Article III, Section 2, and of Section 1331 which implements it, are only such cases as really and substantially involve a controversy as to the effect or construction of the Constitution upon the determination of which the result depends. Purely maritime cases, such as suits for maintenance and cure, obviously do not involve such a controversy. * * *

"It is true that the merits of a common law action upon a maritime claim, if brought in a state court, are reviewable by the Supreme Court under Section 1257(3) of Title 28 U.S.C. because a federal question is involved. But it does not follow that such an action may be brought in a federal district court under Section 1331. For it has been held that a case does not necessarily arise under the Constitution or laws of the United States within the meaning of Section 1331 merely because it involves a federal question, i.e., a 'title, right, privilege or immunity * * * especially set up or claimed under the Constitution, treaties or statutes of * * * the United States', which is reviewable under Section 1257(3). Thus, while a suit for maintenance and cure involves a 'right * * * claimed under the Constitution' in the sense that the Constitution made the ancient maritime law, including its doctrine of maintenance and cure, a part of our national law and is thus within the purview of Section 1257(3), such a suit is not a case which 'arises under the Constitution' in the sense of involving a controversy as to the construction of that document and is, therefore, not within the scope of Section 1331."

In the Second Circuit's Paduano case, supra, suit was commenced as a civil action in the district court by an alien stevedore against a foreign corporation to recover damages for personal injuries allegedly sustained while unloading operations were being performed on the Yamashita Maru. The Circuit Court, in affirming the dismissal of the action for want of jurisdiction, reached the same conclusion as was reached by the Court of Appeals in the Jordine case, only upon different reasoning as is shown by this portion of the opinion:

"In view of the persistence of this legislative attitude and in the absence of any indication that there are situations in which it has not prevailed, we are constrained to conclude that the Congress, in enacting Section 1331 and its predecessor provisions, intended to exclude from its scope, cases such as the one now

before us, in which the general maritime law is the sole substantive basis for awarding the relief claimed in the complaint."

Mullen v. Fitz Simons & Connell Dredge & Dock Co., supra, was an action by a seaman in the District Court for the Northern District of Illinois to recover damages for injuries received as a result of defendant's negligence under the Jones Act and also for maintenance and cure under the general maritime law. The Court of Appeals for the Seventh Circuit held that, in the absence of diversity of citizenship, the lower court did not have jurisdiction to entertain plaintiff's count for maintenance and cure in a civil action tried before a jury, and adopted the language of the Third Circuit in the Jordine case, since a cause of action under the maritime law is to be regarded as non-federal in character as it does not arise under the Constitution or laws of the United States within the meaning of Section 1331.

An action by a Greek seaman against a Greek steamship company for damages allegedly resulting from neglect to provide hospitalization after plaintiff's alleged injury aboard defendant's vessel in foreign waters instituted in a California state court was held by the Ninth Circuit Court of Appeals to be non-removable as being a suit of a civil nature at common law; the court finding that there was no diversity of citizenship and that the suit was between aliens wherein no federal question was raised, and hence was not a suit of which the District Courts of the United States are given original jurisdiction. Since it was not a suit over which the district courts of the United States are given original jurisdiction, it was not removable. Kavourgias v. Nicolaou Co., Ltd., supra. See also, Modin v. Matson Nav. Co., 9 Cir., 128 F.2d 194.

In Melleck v. Oliver J. Olson & Co., D.C.Cal., 149 F.Supp. 481, 483, an action at law in which the first of three causes of action asserted is a claim under the Jones Act, 46 U.S.C.A. 688, and the second and third for unseaworthiness and maintenance, both arising under the general maritime law, the district judge held that the court was without jurisdiction over the second and third causes of action except in admiralty and that therefore they would be transferred to the admiralty side of the court. In the course of the court's opinion based upon the Paduano and Jordine decisions is the following language:

"The claim for breach of the implied warranty of seaworthiness asserted in the second cause of action at bar, and the claim for maintenance asserted in the third cause of action, both arise under maritime law; and so neither presents a case which 'arises under the Constitution, laws or treaties of the United States', within the meaning of [28 U.S.C.A. § 1331]."

In contravention to the holdings in the above cited cases is the First Circuit's decision in Doucette v. Vincent, supra, in which plaintiff asserted, in addition to a claim for negligence, a cause of action for maintenance and cure. In the absence of diversity of citizenship, as both plaintiff and defendant were residents of the State of Massachusetts, as a basis for jurisdiction on the law side of the court, Chief Judge McGruder, speaking for the court, was of the opinion that the Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, required the conclusion that a suit brought on the law side of the federal district court on a claim arising under the general maritime law is "civil action" which "arises under the Constitution" within the meaning of 28 U.S.C.A. § 1331, and that the Court had jurisdiction irrespective of diversity of citizenship. Reference is also made to the dictum in Jansson v. Swedish American Line, 1 Cir., 185 F.2d 212, 30 A.L.R.2d 1385.

The First Circuit reasoned that the Constitution in extending the judicial power of the United States to all cases of admiralty and maritime jurisdiction at the same time, as interpreted by the United States Supreme Court in Knick-

**212**

erbocker Ice Co. v. Stewart, 253 U.S.
149, 40 S.Ct. 438, 64 L.Ed. 834; Panama
R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct.
391, 68 L.Ed. 748, prescribed the sub-
stantive law to be applied in such cases.
By force of these holdings and that of
Southern Pac. Co. v. Jensen, supra, the
court was of the opinion that a claim
based on the general maritime laws was
one that arose under § 1331 so as to
confer jurisdiction on federal courts
even in the absence of diversity of citi-
zenship.

Disagreeing with Doucette and being
of the opinion that this Court would not
have original jurisdiction over this action
if brought on the *civil* side and by force
of the removal statute, 28 U.S.C.A. §
1441, only actions "of which the district
courts of the United States have original
jurisdiction" are subject to removal, an
order will be entered granting plaintiff's
motion to remand.