Robert AIKEN, L. A. Wollam, Bernard W. Anderson, and Lloyd Campbell, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15834.

United States Court of Appeals Ninth Circuit.

Oct. 31, 1958.

Wuerthner & Wuerthner, J. J. Wuerthner, John P. Wuerthner, Great Falls, Mont., for appellants.

Perry W. Morton, Asst. Atty. Gen., A. Donald Mileur, Roger P. Marquis, Attys., Department of Justice, Washington, D.

C., Krest Cyr, U. S. Atty., Butte, Mont., for appellee.

Before HEALY, FEE, and HAMLIN, Circuit Judges.

HEALY, Circuit Judge.

The questions presented in this case are: First, whether a lease of lands in an Indian Irrigation Project obligated the lessee to pay irrigation operation and maintenance assessments as required by regulations of the Department of the Interior, regardless of whether water was actually used or demanded; and, Second, whether the Government forfeited its right to the debt due on the assessments because of failure to press collection efforts expeditiously.

Appellant Aiken leased from the Government certain lands in the Blackfeet Indian Reservation, in Montana.[1] These lands were within the Blackfeet Indian Irrigation project, title to which is in the United States in trust for the Indian allottees. One of the leases was made in 1944; the other in 1946.

About January of 1948 departmental authorities notified appellant that he had failed to pay certain maintenance and operation charges owing the Irrigation Project pursuant to the terms of the leases. Appellant declined to pay the charges on the grounds that his leases did not require such payment, and that irrigation facilities were not available for his land. (It appears that appellant had not used water for irrigation but had practiced dry farming instead.)

The trial court found that appellant took the leases with knowledge of these charges, and that the charges were included in both his leases. Further, it found as a fact that irrigation facilities were available to appellant. While appellant continues to insist the contrary, these findings have ample support in the record. Appellant argues that the court "reformed" his contract without any legal basis for the reformation. We do not so understand the court's decision.

1. The remaining appellants are Aiken's sureties.

As to the 1946 contract it held that that contract in express terms provided for payment of these charges, whether or not water was used,[2] and that as to the earlier contract it so provided by clear implication. These holdings, too, have ample support.

■ When the 1944 contract was entered into, a basic regulation, 25 CFR 171.26, had been promulgated by the Secretary of the Interior and published. It read:

"171.26. Leases or permits; irrigable lands. Leases and permits of restricted allotted or tribal Indian lands within an irrigation project shall require the lessee or permittee to pay on the due date annually in advance during the term of the instrument and in amounts determined by orders of the Secretary of the Interior, the operation and maintenance charges, including penalties assessed against the irrigable acreage of the lease or permit. The irrigation charge shall be in addition to the rental payments prescribed in the lease or permit. All payments of such irrigation charges and penalties shall be made to the Superintendent or other designated officer." [Code of Federal Regulations, Cum.Supp., Book 4, Titles 18–25.]

This regulation was in effect also in 1946.

Appellant had constructive notice of this regulation and of its contents. His leases were obtained by submitting an unqualified acceptance of a published offer to bid. The offer contained language as follows: "Where it is necessary to practice weed eradication by summerfal-

low, the lessee may do so, and there will be no charge for water. But this elimination of water charge may be for one year, only, out of five. * * * Dry land farming is prohibited in this area, and the water rental is payable in advance."

The 1944 contract itself had a provision reading as follows: "All land to be farmed as irrigated farm land on a crop rotation basis. * * * In justified cases a year of summerfallow for weed control will be permitted. * * * If it is shown to be necessary to practice weed eradication *for one year only out of five, water charges will not be required for that year if water is not used."* [Emphasis supplied.]

The last statement plainly implies that of the other four years there is a water charge whether water is used or not. Taking this language in conjunction with the invitation to bid, plus the regulations, the trial court's conclusions are fully supported. The contract stated that it was made in accordance with all applicable regulations.[3]

■ Finally, appellant argues that the government waited too long in making its demand for payment. However, this action is in contract, and it is well settled that the United States may sue at any time upon a contract, and neither limitation nor laches binds it. Consult United States v. Thompson, 98 U.S. 486, 489, 25 L.Ed. 194; United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283, and cases cited; United States v. Fitch, 10 Cir., 185 F.2d 471, 473–474.

Judgment affirmed.

---

2. Appellant does not dispute this holding.

3. The 1946 lease contained in the printed part thereof the following: "6. Operation and Maintenance.—It is understood and agreed that the lessee will pay

all operation and maintenance assessments annually in advance on the due date preceding each irrigation season, including any penalties, accruing against the above-described land under irrigation, pursuant to the existing or future orders of the Secretary of the Interior."