UNITED STATES of America,
Libelant,

v.

THE Tug MANZANILLO, her engines, tackle and apparel, and Shaver Transportation Company, Respondents.

Civ. No. 9685.

United States District Court
D. Oregon.

April 25, 1960.

Supplemental Opinion June 10, 1960.

230

Victor E. Harr, Asst. U. S. Atty., Portland, Or., for libelant.

Kenneth E. Roberts of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for respondents.

KILKENNY, District Judge.

Libelant was the owner and operator of the S.S. Harold L. Winslow and the employer of Capt. Eric A. Peters, herein called Peters, the master of the Winslow. The Tug Manzanillo, herein called Tug, was a towing vessel owned by Shaver Transportation Company, herein called Shaver. On August 26, 1954, libelant agreed with Shaver that it should furnish two tugs to properly and safely tow Winslow, a dead ship loaded with grain, from Portland, Oregon, to a berth at Astoria, Oregon. On August 27, 1954, Shaver furnished libelant two tugs, one being the Tug, which towed Winslow from Portland to a berth at Astoria. After Winslow was so berthed, the Tug took the master and crew of Winslow off the ship, said master and crew descending a ladder from the deck of Winslow to the deck of the Tug, at which time Peters, while coming on board the Tug, fell on the locker hatch of Tug and sustained personal injuries. As a proximate result of the injuries Peters suffered while falling on said locker hatch, libelant paid the claim of Peters on account of maintenance and cure in the fair and reasonable value of $5,912, and the further sum of $250 as reasonable attorney's fees in connection with the settlement of the claim. Libelant demanded said amounts as damages from the Tug and Shaver, no part of which has been paid.

In July, 1955, Peters instituted suit to recover damages against Shaver in the Circuit Court for Multnomah County, Oregon, and in such suit claimed that Shaver was negligent in certain particulars; that he had lost $4,000 in lost earnings and would lose additional earnings; that he had incurred medical and hospital expenses of $682.20. On May 25, 1956, Peters settled said case in said court for the sum of $16,000 which sum was paid to Peters, who on said day executed a release of all claims in favor of Shaver. Said release contained a provision reserving to Peters the right to prosecute any action which he might have against Shaver or others for maintenance and cure under applicable maritime law.

Libelant contends that Shaver, in furnishing such tugs, agreed to various usual and customary services in connection with the towage in question, includ-

ing the taking of the master and crew ashore from a dead ship after towing such ship to the Maritime Administration Reserve Fleet in Astoria, and that at the time of the injury Shaver and the Tug were fulfilling this part of the towage agreement. Libelant also contends that the Tug was not seaworthy, in that an unsafe condition existed on deck with respect to the gear locker hatch, hatch coaming and cover and in failing to secure the cover in place over the hatch, and further that the master and crew of the Tug selected an improper and unsafe place on Tug's deck to receive the master and crew of Winslow on board such deck. It is further contended that this unseaworthiness and negligence was the proximate cause of the injuries to Peters and that such injuries should have been foreseen. The respondents deny libelant's contentions, set up negligence on the part of Peters, and claim that the suit was not brought within a reasonable time and that the respondent has been prejudiced thereby.

■ I shall first dispose of the defense of laches. We must keep in mind that the United States is the libelant. In such case, the doctrine of laches cannot be raised. United States v. Summerlin, 1940, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283; Aiken v. United States, 9 Cir., 1958, 260 F.2d 936; Olshausen v. C. I. R., 9 Cir., 1959, 273 F.2d 23.

■ Since this is an action for indemnity in connection with a payment for maintenance and cure, it is questionable whether the plea of contributory negligence is sound. However, I do not have to decide that question, in that I find there was no substantial evidence of contributory negligence on the part of Peters.

■ The evidence is clear that respondents, as part of the towage contract, agreed to take the master and crew of Winslow ashore and that this was a usual and customary arrangement in towing dead ships to the Maritime Administration Reserve Fleet at Astoria. Likewise, it is clear that Peters was injured while he was coming aboard the Tug pursuant to the usual and customary practice in connection with such towage contracts. Under such circumstances, the usual and customary practice forms a part of the contract itself. Sun Oil Co. v. Dalzell Towing Co., 2 Cir., 1932, 55 F.2d 63, 64, affirmed 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311; Thibeault v. Boston Towboat Co., D.C.Mass., 1939, 28 F.Supp. 152.

■■ Since the respondents assumed the obligation of transporting the master and crew to shore, it also assumed the duty to furnish a seaworthy vessel. The evidence is convincing that the Tug was unseaworthy in the claimed particulars. The fact that the hatch cover was in a dangerous condition was recognized by the members of the crew of the Tug. They claim the condition was so dangerous that they actually cautioned, or attempted to caution, Peters of the danger. In this state of the record, I must hold that the Tug was unseaworthy. Likewise, it is clear that such unseaworthy condition was the proximate cause of Peters' injuries.

Respondents urge that libelant is not entitled to recover for the $5,912 maintenance and cure and attorney's fees and expenses in the sum of $250 which was paid to Peters. Respondents cite Standard Oil Company of Cal. v. United States, 9 Cir., 1946, 153 F.2d 958; 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. That case involved an action by the United States against Standard Oil Company to recover for the loss of services to the plaintiff of a member of the armed forces. The maritime law was not involved. The court in that case was dealing with the state law of California and certain common law principles. Since this was an action for loss of the services of an employee, rather than an action for maintenance and cure under the admiralty law, the decision is of little value.

In Houston Belt & Terminal Railway v. Burmester, Tex.Civ.App.1957, 309 S. W.2d 271, the owner of the ship sought to recover against the owner of an automobile, in which the captain of the ship

was injured, certain amounts paid under general maritime law for maintenance and cure, which sum was paid on the theory that the owner of the automobile had an implied contract with the shipowner for the safe carriage of the captain to the ship. The Texas court denied recovery on the theory that such recovery could only be had under the maritime law and that since such law is not applicable in Texas, the shipowner could not recover. Again, we had a situation where the court applied the common law, rather than the maritime law. The action was prosecuted under the laws of the state of Texas and the court refused to apply the law of admiralty. The Texas court held that the general maritime law was not applicable in Texas and for that reason it would follow the state law as announced in Morgan v. Woodruff, Tex. Civ.App., 208 S.W.2d 628. I must assume that the Texas court took this position for the reason that the captain was injured while on land and not on navigable waters. Otherwise, Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, would be applicable. It was there held that a person injured on navigable waters while on a ship must assert his rights under maritime law, rather than under the law of the state. The Texas case is not in point.

Respondents have consistently presented their defense on a theory of pure tort. They fail to recognize the libelant's theory that its cause of action is grounded in contract. Federal No. 2, 2 Cir., 1927, 21 F.2d 313, is the principal case on which respondents rely. In order to understand the decision in this case, I must place myself in the same legal position as the author of the opinion. On the claim for maintenance and cure, his position was expressed:

"* * * The basis of the claim is that the negligence resulting in injury to Parr gave rise to the occasion which required or obliged the appellant to pay the hospital bill. Even though one causes injury to another, *to impose responsibility therefor contemplates a violation of a legal duty. The tug owed no legal duty to the appellant with reference to its contractual rights with the seaman.*" (Emphasis added.)

Although I disagree with the author's legal conclusion as to the violation of a legal duty, the language fully explains the ultimate decision. In this case I have already held that respondents were under a contractual duty to libelant to furnish a seaworthy ship. Federal No. 2 supports the respondents' contentions. However, in the light of the "stevedore" cases hereinafter mentioned, I do not believe that Federal No. 2 is sound. Respondents cite numerous other cases which lend general support to their theory. I do not believe a discussion of these cases would cast light on this rather confused problem. The cases in point on the subject are few and are in hopeless conflict.

 It seems clear that maintenance and cure is a duty imposed by law on the contractual relationship between the shipowner and the seaman. This is another way of saying that the law is read into every contract. Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368. The libel in this case is based primarily on a breach of a contract. Such contract required respondents to furnish a seaworthy tug. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (stevedore cases). A usual and customary service rendered becomes part of the contract. Thibeault v. Boston Towboat Co., supra.

 Libelant relies principally on Jones v. Waterman S.S. Corp., 3 Cir., 1946, 155 F.2d 992. Jones and the stevedore cases support the libelant's theory. Although I believe the ultimate conclusion reached in Jones is sound, such conclusion is reached by discarding the

maritime law and adopting common law principles. In the light of Ryan and Crumady, supra, this was unnecessary. Where a ship or its owner, such as respondents in this case, permit or allow an unsafe condition to exist, such condition is in violation of the contract with the libelant and it may institute an action and prosecute a libel on such contract to recover the amount paid to a third person by reason of such unsafe condition. Ryan Stevedoring Co. v. Pan-Atlantic, supra; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra; Crumady v. The Joachim Hendrik Fisser, supra. The above cases dealt with stevedore contracts. The same rule is applied to towage contracts. Thibeault v. Boston Towboat Co., supra; James McWilliams Blue Line v. Esso Standard Oil Co., 2 Cir., 1957, 245 F.2d 84.

Respondents attempt to distinguish Ryan, Crumady and similar cases on the theory that they had not breached any duty to Peters in regard to maintenance, but, if anything, had merely breached its duty to him in regard to reasonable care. Under the contract theory of indemnity, the respondents would and should foresee that the unseaworthiness of the Tug would probably create a situation whereby libelant would incur an obligation for maintenance and cure.

Even though we treat the libelant's cause as one in tort, the authorities in the ninth circuit would permit a recovery. The third party owes to the owner of the ship the duty to refrain from negligent acts which foreseeably would impose a liability on such owner, and owes a similar obligation to the owner, not in pari delicto in such negligence, to indemnify him for the amount he is required to pay because of such negligent acts. States Steamship Co. v. Rothschild International Stevedoring Co., 9 Cir., 1953, 205 F.2d 253, 256. The respondents could reasonably foresee that Peters would be injured if the Tug was in an unseaworthy condition.

Therefore, under the doctrine as taught in Ryan, Jones, Crumady and similar cases, the respondents would be liable. I conclude that there is liability from respondents to libelant for the full amount of maintenance and cure, unless respondents have already paid all or a portion thereof.

Under admiralty law, "cure" means medical care and attention and "maintenance" means subsistence during disability. Mullen v. Fitz Simmons, etc., 7 Cir., 1951, 191 F.2d 82, 85; Calmar S.S. Corporation v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. The ordinary seaman has no right to recover maintenance and cure from his employer *and also* recover *loss of earnings,* medical, doctor and hospital expense from a negligent third party, such as respondents in this case. Gomes v. Eastern Gas & Fuel Associates, D.C.Mass.1954, 127 F.Supp. 435.

"Earnings" is a more comprehensive term than "wages." "Earnings" is sufficiently extensive to include not only the wages paid, but also any other pecuniary benefits to him resulting from the contract of employment, including board. Burns v. Maurer, 72 Misc. 481, 131 N.Y.S. 344, 345; B. F. Goodrich Tire & Rubber Co. v. Yellow Taxi Corporation, 154 Misc. 440, 277 N.Y.S. 468; First National Bank of Wilkes-Barre v. Barnum, D.C.Pa., 160 F. 245. In the complaint filed by Peters in the Circuit Court for Multnomah County, he claimed special damages for *lost earnings* and medical and hospital expenses. Under the facts as I have found them, Peters, as a matter of law, would be entitled to recover, in such case, his lost earnings and his doctor, medical and hospital expense. Such lost *earnings* would include maintenance and cure. There is no question but that the items which go to make up maintenance and cure were properly included in the damage action against the respondents in the state court. Seely v. City of New York, 2 Cir., 1928, 24 F.2d 412; Thibeault v. Boston Towboat Co., supra; Mystic Terminal Co. v. Thibeault, 1 Cir., 1940, 108 F.2d 813.

It has been said that courts of admiralty exercise their jurisdiction

upon equitable principles. Swift & Co. Packers v. Compania Columbiana Del Caribe, 1950, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206. Equitable principles would prohibit two recoveries to be made against respondents for the same items of damage. Since the libelant derives its cause of action from Peters, its claim should have no greater validity than his.

It is argued that maintenance and cure, as such, could not be recovered against the respondents. Under the technical name, no such recovery could be had. On the other hand, maintenance and cure means nothing more than board, lodging and hospital, doctor and medical expenses. Board and lodging are normally included in a person's earnings. No one questions that Peters' lost earnings and his doctor, hospital and medical bills could be recovered by him in an action directly against the respondents. Therefore, maintenance and cure was directly involved in the state action.

The burden of proof would have been on Peters, and is now on libelant, to separate those items for which the respondents would not be entitled to credit. Gomes v. Eastern Gas & Fuel Associates, supra. The record discloses that Peters received $16,000 on the settlement in state court on May 25, 1956. The only maintenance and cure paid after that date, as shown by the documentary evidence, was $1,400 which was paid on September 27, 1956. I find that the libelant is entitled to judgment in that amount only.

This opinion shall stand as the findings of fact and conclusions of law in this case. Counsel for respondents shall prepare, serve and present an appropriate judgment.

Supplemental Opinion

Proctors for libelant have made a very forceful argument in support of their position that the Court should modify its original opinion and allow libelant the full amount of its claim for maintenance and cure.

The force and logic of the argument by proctors for libelant pinpoint the interesting quality of the legal question involved. Cases such as Muise v. Abbott, 1 Cir., 1947, 160 F.2d 590; Reardon v. California Tanker Co., 2 Cir., 1958, 260 F.2d 369, 375; and McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 727, holding that a seaman cannot make a double recovery, to some extent support, rather than detract from, the logic of my original opinion. The libelant should not have greater rights than the seaman, and if the seaman could not enforce this claim at this time, neither can the libelant.

Proctor for respondents may prepare appropriate orders denying the pending motions.